UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN R. SANTUCCI,

                Plaintiff,

     v.                              3:05-cv-0971

NEWARK VALLEY SCHOOL DISTRICT,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

**I.    INTRODUCTION**

      Plaintiff John Santucci commenced the instant action against Defendant Newark Valley School District asserting a violation of his constitutional rights as a result of his having been assaulted by another individual on school grounds. Presently before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief can be granted.

**II.    FACTS**

      The following facts are taken from Plaintiff's Complaint and, for purposes of this motion, are assumed to be true.

      At all times relevant hereto, Brent Berner ("Berner") was a student in the Newark Valley School District. Berner had a history of assaultive behavior. Brenner had been removed from school for a period of time due to his violent behavior. At some unspecified

time, school officials learned that Berner's girlfriend invited Plaintiff to the school prom. When Plaintiff went to purchase a ticket to the prom, school officials called Plaintiff and Berner in and inquired with whom each would be attending the prom. School officials informed Berner that Plaintiff would be attending the prom with Berner's girlfriend.

On or about June 15, 2004, Berner parked his vehicle on school property in such a way as to block the main sidewalk leading to the school. At approximately 11:30 a.m., Plaintiff arrived at the school to take a final examination. As he was getting out of his car, Plaintiff was assaulted by Berner.

Based on the foregoing, Plaintiff claims that Defendant deprived him of his constitutional rights. Defendant now moves to dismiss on the ground that the Complaint fails to state a claim upon which relief can be granted.

### III.  STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in favor of the nonmoving party. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 31 (2d Cir. 2005), cert. granted, — S. Ct. —, 2005 WL 873163 (Sept. 27, 2005). The Complaint may be dismissed only if it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Id.

### IV.  DISCUSSION

#### a.  42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, Plaintiff must demonstrate that a person acting under color of law deprived him of his rights under a federal statute or the United States Constitution. There is no allegation that Berner was acting under color of state law.

Accordingly, Plaintiff's claim is predicated upon Defendant's: (1) telling Berner that Plaintiff would be attending the prom with Berner's girlfriend, thereby providing Berner with the information that incited his anger or otherwise aroused his jealous rage; and (2) failing to supervise or otherwise prevent the assault.

As an initial matter, Plaintiff fails to allege that a municipal policy, practice, or custom caused his injuries, as is required for a finding of municipal liability under Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978). The Complaint fails to indicate that the Defendant's acts were committed by someone who can reasonably be considered a policy maker. Even assuming Plaintiff can overcome this hurdle, for the following reasons, the Complaint fails to state a claim upon which relief can be granted.

Plaintiff is proceeding under the substantive due process clause of the Fourteenth Amendment to the United States Constitution. "[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal quotations, alterations, and citation omitted). "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Id. at 847 (internal quotations and citation omitted). The Supreme Court has:

> rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and [has] held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. . . . It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; <u>conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level</u>.

523 U.S. at 848-89 (emphasis added).  In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the Supreme Court noted that the Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. . . [T]he Due Process Clauses generally confer no affirmative right to governmental aid."  489 U.S. at 196.  Based on these holdings, courts have overwhelmingly held that, absent the existence of some special relationship or some conduct on the part of the municipality that creates a causal relationship between the municipality and the alleged injury, municipalities have no obligation to protect private parties from the acts of other private parties.  See Robertson v. Arlington Central Sch. Dist., 229 F.3d 1136, 2000 WL 1370273 (2d Cir. 2000) (table) (no substantive due process violations where child was harmed by a third person in school); Star v. Burlington Police Dep't, 189 F.3d 462, 1999 WL 710235 (2d Cir. 1999) (table) (plaintiff's allegation that police department's failure to respond to complaints allowed third party to cause her harm did not state valid due process claim); Skibinski v. Lazaroff, 173 F.3d 846, 1999 WL 220149 (2d Cir.) (table) (government official's failure to act upon complaints is not cognizable under section 1983), cert. denied, 528 U.S. 867 (1999), reh'g denied, 528 U.S. 1183 (2000); Natale v. Town of Ridgefield, 170 F.3d 258 (2d Cir. 1999); Suffolk Parents of Handicapped Adults v. Wingate, 101 F.3d 818 (2d Cir. 1996), cert. denied, 520 U.S. 1239 (1997); Brooks v. Giuliani, 84 F.3d 1454 (2d Cir. 1996), reh'g denied, No. 95-9178 (2d Cir. Aug. 7, 1996), cert. denied, 519 U.S. 992 (1996).

       This Court has already held that schools have no general duty under the Due Process Clause to protect students from assaults by other students.  See Patenaude v.

Salmon River Central Sch. Dist., No. 3:03cv1016 (N.D.N.Y. 2005). Even in light of compulsory attendance laws,[1] no special relationship is created between students and school districts such that school districts take on any such duty to protect students from the private actions of others. As the Tenth Circuit has stated:

> schools have no duty under the Due Process Clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented. If the state takes a person into custody or holds him against his will, the state assumes some measure of a constitutionally mandated duty of protection. [Graham v. Independent Sch. Dist. No. I-89, 22 F.3d 991, 994 (10th Cir. 1994)]. Compulsory attendance laws for public schools, however, do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school. Id. (citing Maldonado v. Josey, 975 F.2d 727, 732 (10th Cir. 1992), cert. denied, 507 U.S. 914, 113 S. Ct. 1266, 122 L. Ed.2d 662 (1993)). Inaction by the state, in the face of a known danger, is not enough to trigger a constitutional duty to protect unless the state has a custodial or other "special relationship" with the victim. See Graham, 22 F.3d at 995. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it has imposed on his freedom to act on his own behalf." DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 200, 109 S. Ct. 998, 1005-06 (1989). The school district in this case did not limit [plaintiff's] freedom to act on his own behalf, and therefore, no special relationship arose triggering a constitutional obligation to protect [plaintiff] from other students.

Seamons v. Snow, 84 F.3d 1226, 1235-36 (10th Cir. 1996). Other Circuit Courts are in agreement. See Doe v. Hillsboro Independent Sch. Dist., 113 F.3d 1412, 1415 (5th Cir. 1997); Sargi v. Kent City Bd. of Educ., 70 F.3d 907, 911 (6th Cir. 1995); Dorothy J. v. Little Rock School Dist., 7 F.3d 729, 732 (8th Cir. 1993); D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1368-73 (3d Cir. 1992) (en banc); J.O. v. Alton Community Unit School Dist. 11, 909 F.2d 267, 272 (7th Cir. 1990); see also Vernonia Sch. Dist. v.

---

[1] Under compulsory attendance laws, students are not required to attend state-run schools. To the contrary, they can be home schooled or attend private schools.

Acton, 515 U.S. 646, 655 (1995) ('[W]e do not, of course, suggest that public schools as a general manner have such a degree of control over children as to give rise to a constitutional 'duty to protect.'"); Crispim v. Athanson, 275 F. Supp.2d 240, 246-47 (D. Conn. 2003); Genao v. Board of Educ. of City of New York, 888 F. Supp. 501, 505 (S.D.N.Y. 1995) ("A municipality may not be held liable for injuries resulting from the failure to provide police protection. Cuffy v. City of New York, 69 N.Y.2d 255, 260, 513 N.Y.S.2d 372, 505 N.E.2d 937 (1987). This is true even if the failure occurred at a public school."). This Court agrees and adopts the reasoning of the above-cited cases.

Even assuming such a duty existed, Defendant's conduct was not so conscience shocking so as to give rise to a claim for a substantive due process violation. See County of Sacramento, 523 U.S. at 846 ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional senses.") (internal quotations and citation omitted); Collins v. City of Harker Heights, Tex., 503 U.S. 115, 130 (1992) ("[T]he Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the workplace and the city's alleged failure to train or to warn its . . . employees was not arbitrary in a constitutional sense."); Webster v. Reproductive Heath Servs., 492 U.S. 490, 491 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government may not deprive the individual."); DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989) (holding that a state had no duty to protect a child from his father after receiving reports of possible abuse); United States v. Salerno, 481 U.S. 739, 746 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . .

or interferes with rights 'implicit in the concept of ordered liberty' ") (quoting Rochin v. California, 342 U.S. 165, 172 (1952) and Palko v. Connecticut, 302 U.S. 319, 325-326 (1937)); Daniels v. Williams, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property" (emphasis in original)).  Defendant's telling Berner that Plaintiff was going to the prom with Berner's girlfriend is not sufficiently conscience shocking to rise to the level of a substantive due process violation.

Plaintiff claims that Defendant may be liable under the state created danger doctrine.  Plaintiff alleges that Defendant created the danger by informing Berner that Plaintiff would be attending the prom with Berner's girlfriend.  As this Court recently explained:

> The state created danger exception, first articulated by the Second Circuit in the police context in Dwares v. City of New York, 985 F.2d 94 (2d Cir.1993), essentially holds that a state actor can be held liable for a substantive due process violation when the state actor takes some affirmative step that "assisted in creating or increasing the danger to the victim." Dwares, 985 F .2d at 98-99; see Citizen's Accord, Inc., 2000 WL 504132, at *20 ("The ... state-created danger theory [ ] comes into play where a state actor creates the danger or increases the victim's vulnerability to the danger.")(citing DeShaney, 109 S. Ct. at 1006; Dwares, 985 F.2d at 99); Brown v. Commonwealth of Pa. Dept. of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 478 (3rd Cir.2003)("This 'state-created danger' exception applies when the state, through some affirmative conduct, places the individual in a position of danger.")(citing Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir.1998)).
>
> While "the boundaries of the state created danger exception to DeShaney are not entirely clear," Clarke v. Sweeney, 312 F.Supp.2d 277, 293 (D. Conn.2004); see Brown, 318 F.3d at 479 ("Determining the appropriate lens through which we must view actions in the state-created danger context, though, is a vexing problem."), there are a number of common elements that the various courts have adopted. See Ruiz v. McDonnell, 299 F.3d 1173, 1182-83 (10th Cir. 2002)(listing elements); Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996)(listing elements); Citizen's

> Accord, Inc., 2000 WL 504132, at * 18-*24 (discussing the common elements of this exception).
>
> First, the actor must have acted affirmatively, using his or her authority to create an opportunity that would not otherwise have existed for the third party's acts to occur. Citizen's Accord, Inc., 2000 WL 504132, at *21; see Brown, 318 F.3d at 478; Ruiz, 299 F.3d at 1183; Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir. 1995). Second, there must be evidence that the state actor had culpable knowledge of the danger in which he or she was placing the victim. Citizen's Accord, Inc., 2000 WL 504132, at * 21 (citations omitted); Ruiz, 299 F.3d at 1182-83; Kneipp, 95 F.3d at 1208. Because such a claim is brought under Section 1983, the state actor must have displayed at least deliberate indifference to a known or obvious danger. Brown, 318 F.3d at 479; Kneipp, 95 F.3d at 1208; Piotrowski v. City of Houston, 237 F.3d 567, 584 (5th Cir.2001). "The Supreme Court has specifically pointed out that the Due Process Clause is not implicated by an official's negligent act. . . . Indefensible passivity and nonfeasance do not rise to the level of a constitutional violation." Brown, 318 F.3d at 479 (citing, inter alia, Daniels v. Williams, 474 U.S. 327, 328 (1986)).
>
> Third, there must be evidence that the state actor's conduct caused the injury to the victim, or contributed to it in some material way. Clarke, 312 F. Supp.2d at 293; Ruiz, 299 F.3d at 1182-83. Fourth, there must be evidence that the state actor's conduct was so egregious or outrageous that it is conscience-shocking. Burton v. Richmond, 370 F.3d 723, 729 (8th Cir.2004), cert. denied, 125 S. Ct. 1431 (2005); Ruiz, 299 F.3d at 1182-83; but see Brown, 318 F.3d at 479-80 (concluding that the "conscience-shocking" standard applies only in cases where state actors must "act with urgency.").

Hilbert S. v. County of Tioga, 2005 WL 1460316, at *3-4 (N.D.N.Y. 2005).

Plaintiff's allegations fail to satisfy any of these elements. First, it cannot be said that Defendant used its authority to create an opportunity that would not otherwise have existed for Berner's acts to occur. There would have been ample opportunity for Berner to assault Plaintiff notwithstanding any information Defendant may have given Berner regarding the prom. Berner was bound to find out that his girlfriend was going to the prom with Plaintiff,

either before or after the prom.[2]  This is particularly so where it appears that the assault, which occurred during the final examination period in June 2004, likely took place *after* the prom.

      Second, although Defendant may have known that Berner had violent propensities, there is no factual allegation or indication that Defendant should have known that its conduct in providing information about the prom was placing Plaintiff in danger of assault.  There is no allegation that Defendant was aware of any prior incidents between Berner and Plaintiff.  While it is reasonably foreseeable that Berner would be displeased, or upset, with the news, the same cannot be said for a violent assault.  Generalized knowledge of Berner's history is insufficient.  It, therefore, cannot be said that Defendant acted with deliberate indifference.

      Third, Defendant's conduct did not cause injury to the victim.  The cause of injury to Plaintiff was Berner's assault.  It also cannot be said that Defendant's conduct contributed to Plaintiff's injury in some material way.  Although Defendant's may have provided Berner with information concerning the prom, it did not facilitate the assault.  Defendant did not create the situation that led to the assault.  The situation leading to the assault, Plaintiff's attending the prom with Berner's girlfriend, was created by Plaintiff together with Berner's girlfriend.  Further, the resultant assault was too attenuated to be connected to Defendant's actions.  Based on the allegations in the Complaint, it is clear that the assault did not occur on the same day as Defendant's are alleged to have given information to Berner.  Thus, it appears that Berner did not act out of the "heat of the moment" as a result of the information given by

---

[2] It is possible that Berner already knew about the prom details by the time he learned any such information from Defendant.

Defendant. Rather, the allegations in the Complaint describe a deliberate decision by Berner to assault Plaintiff.

Fourth, as previously discussed, Defendant's actions were far from conscience shocking. The conduct attributed to Defendant is far removed from the type of conduct found to satisfy the standard of conscience shocking.

For all the foregoing reasons, Plaintiff's Complaint fails to state a claim under 42 U.S.C. § 1983. To the extent Plaintiff asserts any state law claims, the Court declines to exercise supplemental jurisdiction.

**b.**     **Rule 11**

In the concluding paragraph of his memorandum of law in opposition to Defendant's motion to dismiss, Plaintiff's attorney, Kevin Guyette, writes as follows:

> The defendant could have clearly found the case law and reasoning cited herein in any hornbook treatus [sic] on the subject of civil rights liability. Rhetorically, one wonders what the purpose of this motion is; whether it is a good faith attempt to dismiss the matter for failure to state a claim or if it was in fact a strategical use of the Court's time for a type of discovery in order to determine plaintiff's intent on what theory it is relying upon. Because liability is so clear in this case, the plaintiff should be entitled to Rule 11 sanctions for frivolous actions on the part of the defendants.

Rule 11 is not a sword that is to be yielded by attorneys in an effort to fend off possible opposition by one's adversary. Rather, it should be reserved only for conduct that rises to a sufficient level of culpability. As is evident from the above discussion concerning the merits of Defendant's motion, it cannot be concluded that Defendant's motion was anything other than a good faith attempt to dismiss the matter for failure to state a claim. Defendant was well within its rights to file a motion to dismiss a Complaint that lacks legal merit under 42 U.S.C. § 1983. Moreover, any request for sanctions under Fed. R. Civ. P. 11

is patently improper as it fails to comply with the basic requirements of that Rule.  <u>See</u> Fed. R. Civ. P. 11(c)(1)(A).

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's Complaint is DISMISSED.  The Clerk of the Court shall close the file in this matter. IT IS SO ORDERED.

Dated: October 24, 2005

_____
Thomas J. McAvoy
Senior, U.S. District Judge